UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

LINDA JAN MINIX,    )
                    )
    Plaintiff,      )
                    )          Civil No. 7:21-cv-00067-GFVT
V.                  )
                    )          **MEMORANDUM OPINION**
                    )          **&**
KILOLO KIJAKAZI, *Acting Commissioner*  )   **ORDER**
*of Social Security*   )
                    )
    Defendant.      )
                    )

*** *** *** ***

Linda Jan Minix seeks judicial review of an administrative decision denying her claim for disability insurance benefits.  Ms. Minix brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the ALJ considering this matter.  The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Ms. Minix's Motion for Summary Judgement [R. 11] and **GRANT** the Commissioner's.  [R. 15.]

**I**

Plaintiff Linda Jan Minix first applied for Title II disability insurance benefits on March 5, 2013, alleging disability beginning January 28.  [Tr. at 71.]  The claim was denied initially and on reconsideration.  *Id.*  The claimant then requested a hearing which was held on August 5, 2015.  *Id.*  ALJ Meade denied that claim on October 19.  *Id.* at 82.  Ms. Minix applied for disability benefits again in 2016, alleging a disability onset date of June 15, 2016.  *Id.* at 201, 222.  She stated she suffers from deteriorating disc disease, left shoulder injury, right leg nerve damage, arthritis, and osteopetrosis, all of which limit her ability to work.  *Id.* at 228.  Again, the claim was denied initially and on reconsideration, after which ALJ Barker held a hearing upon the claimant's request.  *Id.* at 23.

ALJ Barker denied Ms. Minix's claim on February 11, 2019 after concluding that no physician mentioned findings of equivalent severity to any of the impairments listed under 20 C.F.R. 404.1520(d), 404.1525, and 404.1526. *Id.* at 24-25. He found that she had the residual functional capacity to perform light work subject to a few exceptions, could perform her previous job, and was not disabled. *Id.* at 25-28. The Appeals Council declined to review the claim, rendering the ALJ's decision final. *Id.* at 6-8. Subsequently, the claimant filed an action in this District. *Id.* at 703-09. The Commissioner moved to remand the case back to the Social Security Administration for further proceedings, which was granted. *Id.* at 713. The Appeals Council remanded the case to the ALJ for reconsideration. *Id.* at 717. On reconsideration, ALJ Meade also found that the claimant does not have any impairments as severe as those listed in C.F.R. 404.1520(d), 404.1525, and 404.1526 and that she has the RFC to perform light work, with some exceptions. *Id.* at 639-50. Ms. Minix then filed this action asking the Court to review that decision. [R. 1.] Both parties have now filed motions for summary judgment which are ripe for review. [R. 11; R. 15.]

## II

### A

To evaluate a claim of disability for Title II disability insurance benefits claims purposes, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520. First, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Second, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities or has not had a qualifying impairment for a period of at least twelve months, she is not disabled. *See* 20 C.F.R. §§ 404.1509; 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part

404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, an ALJ considers a claimant's RFC and past relevant work, and if the claimant is still able to do her past relevant work, she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  Fifth, if an ALJ assesses a claimant's RFC in conjunction with her age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled.  *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1560(c).  Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving her lack of residual functional capacity.  *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

Before completing the five-step analysis to determine whether Ms. Minix was disabled for the purposes of receiving disability insurance benefits, ALJ Meade determined that Ms. Minix remained insured through June 30, 2017.  [Tr. at 641.]  Accordingly, she must have been disabled between June 15, 2016 through June 30, 2017 to be eligible for disability benefits.  *Id.*  After making this determination, ALJ Meade completed the five-step analysis to determine Ms. Minix's disability status.  He first determined whether Ms. Minix held "substantial gainful employment"

3

during the period in which she claimed to be disabled.  To determine whether an individual has

engaged in "substantial gainful employment," the individual must have engaged in work that "is

usually done for pay or profit, whether or not a profit is realized."  *Id.* at 66 (citing 20 C.F.R. §§

404.1520(a)-(b)).  ALJ Meade found Ms. Minix had not engaged in substantial gainful activity

within the disability period.  [Tr. at 641.]

At step two, ALJ Meade found that Ms. Minix had the following severe impairments:

"lumbar degenerative disc disease with history of L5-S1 micro discectomy; thoracic degenerative

disc disease; osteoarthritis; chronic myofascitis; osteoporosis; history of left wrist open reduction

and internal fixation surgery; and left clavicle fracture, status post open reduction internal

fixation."  *Id.*  But at step three, the ALJ found that none of these impairments nor any combination

of them "met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1."  *Id*. at 642.

Before proceeding to step four, ALJ Meade determined Ms. Minix's residual functional

capacity (RFC).  *See* 20 C.F.R. § 404.1520(e).  After considering the record, ALJ Meade made the

following determination regarding Ms. Minix's RFC:

> The undersigned finds that, through the date last insured, the claimant had the residual
> function capacity to perform light work as defined in 20 CFR 404.1567(b) except she
> could lift and carry up to twenty pounds occasionally. During an eight-hour workday, she
> could sit a total of eight hours (two hours at a time) and can stand and/or walk a total of
> six hours (one hour at a time). She could never climb ladders or scaffolds. She could
> occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl. She could never be
> exposed to vibrations. She could occasionally be exposed to moving mechanical parts.
> The claimant could frequently operate a motor vehicle. She could occasionally reach
> overhead with the left upper extremity. She could frequently reach in all directions with
> the left upper extremity.

[Tr. at 644.]  After determining Ms. Minix's RFC, the ALJ proceeded to step four.  Here,

ALJ Meade considered the testimony of a vocational expert (VE) and concluded that Ms. Minix

would be able to perform her past relevant work as a receptionist.  *Id.* at 648.  At step five, ALJ Meade, consulting the VE's testimony in conjunction with the age, education, work experience, and residual functional capacity of the claimant, determined that there were jobs in the national economy that Ms. Minix could perform.  *Id.* at 649.  Specifically, those jobs were sub assembler, production sorter, and bench assembler.  *Id*.  After completing all five steps of the analysis, the ALJ concluded that Ms. Minix was not disabled as that standard is defined in the Social Security Act, and, therefore, did not qualify for disability insurance benefits.  [*Id.*; *see* 42 U.S.C.A. 416(i).]

## B

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole.  *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  A reviewing court is restricted from conducting a *de novo* review, resolving conflicts in the evidence, or making credibility

determinations.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also*

*Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the

Commissioner's decision is supported by substantial evidence, it must be affirmed even if the

reviewing court would decide the matter differently, and even if substantial evidence also

supports the opposite conclusion.  *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## C

Ms. Minix argues that the record lacks substantial evidence to support the ALJ's step

three finding that she had the residual functional capacity to perform substantial physical and

mental work despite her impairments.  [R. 11.]  Specifically, she argues that the RFC failed to

accommodate her worsening conditions in her left wrist and left hip.  *Id.* at 3.  She compares the

2015 RFC and the RFC in this action and shows that the only difference is "the addition of

limitations in Ms. Minix's ability to reach with the left upper extremity."  *Id.*  She asserts that the

medical evidence shows a "documented increase in deterioration and symptomology effecting

[sic] both the upper and lower left extremities" to such an extent that her RFC should have

included additional limitations.  *Id.*  Because she believes her RFC does not accurately describe

her condition, she claims the VE's testimony in reliance on that RFC does not constitute

substantial evidence.  *Id.* at 7-8.

The Commissioner argues that substantial evidence supports the ALJ's conclusion.  [R.

15.]  The Commissioner recognizes that Ms. Minix's health records show "orthopedic problems"

from before the alleged onset date.  *Id.* at 9.  These problems worsened in her left upper

extremity when she broke her clavicle on the alleged onset date but healed normally.  *Id.* at 9-10.

Ms. Minix's RFC took this injury into account by limiting her ability to reach with that arm.  *Id.*

6

at 11.  The Commissioner argues that the evidence does not support any additional impairments warranting restrictions within the relevant timeframe.  Overall, the Commissioner asserts that the plaintiff is asking the Court to evaluate the evidence differently than the ALJ, which is contrary to the court's role when reviewing an ALJ's determination.  *Id.* at 12.

### D

The Court agrees with the Commissioner.  Upon examination of the record, it is evident that the ALJ did consider both of Ms. Minix's worsening symptoms.  While establishing her RFC, the ALJ stated he "considered all symptoms" and mentioned her wrist pain multiple times. [Tr. at 644-47.]  Ms. Minix cites to evaluations conducted by Drs. Royalty and Arnett, which she claims establish her worsening wrist conditions which should have resulted in additional limitations.  [R. 11 at 4-6.]  But the ALJ specifically mentions both evaluations, so it is incorrect to state that "at no point does the ALJ consider the evidence demonstrating a worsening left hand and wrist impairment."  [Tr. at 646-47; R. 11 at 4.]  The ALJ did consider that evidence but concluded that Ms. Minix did not need greater limitations

Ms. Minix is effectively asking the Court to re-weigh the evidence and find that the ALJ's judgment that additional limitations were not required was incorrect.  But "the Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner." *Putman v. Astrue*, 2009 WL 838155 at *5 (E.D. Tenn. Mar. 30, 2009); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).  The ALJ reviewed the evaluations Ms. Minix relies on and still concluded that her statements about the severity and limiting effects of her symptoms were inconsistent with the medical evidence.  [Tr. at 647.]  He found "the record did not indicate she had strength deficits, circulatory compromise, . . . [or] muscle spasms" and that "her musculoskeletal examination showed no swelling, no effusion, and no deformities."  *Id.*

7

This lack of evidence supports the ALJ's decision not to include additional limitations for the claimant's wrist condition.

The same is true for Ms. Minix's alleged worsening left hip pain.  The only evidence she claims establishes that her hip pain worsened during the relevant time period is her late 2017 hip replacement, which occurred outside of the relevant timeframe.  [R. 11 at 6.]  She points to treatment notes for that surgery stating that her hip problems were gradual, implying that she suffered from some degree of hip pain during the relevant period.  *Id.*  The RFC did take her hip pain into account because the ALJ gave "great weight" to the 2015 RFC, which thoroughly considered her complaints of hip pain.  [Tr. at 647; 75-79.]   That RFC considered a 2013 examination in which Ms. Minix complained of hip pain.  *Id.* at 75.  That doctor gave her a 3/5 right hip strength score and noted that while this pain caused some limitations, she had a "steady gait, stable station," and could "stand on one leg, bend at the waist to 45 degrees, and heel and toe walk."  *Id.* at 75-76.  Further, the RFC noted Ms. Minix's primary care treatment from 2013-2015, in which hip pain was observed but she had a "normal straight leg raise . . . mostly normal lower extremities, . . . and the ability to stand without difficulty."  *Id.* at 76.  At least in part because of her hip pain, the 2015 RFC included limitations on Ms. Minix sitting, standing, walking, climbing, stooping, kneeling, crouching, and crawling.  *Id.* at 74.  All of these limitations were included in the new RFC.  *Id.* at 644.

The ALJ's decision not to include additional limitations based on Ms. Minix's worsening hip pain is supported by substantial evidence.  It is true that one physician who examined Ms. Minix after the relevant timeframe stated her hip issues had a "gradual" onset.  [Tr. at 1148.]  But Ms. Minix neither provides evidence establishing nor explains the extent of her worsening condition and what additional limitations would have been warranted within the relevant

8

timeframe.  [R. 11 at 6.]  For Ms. Minix's position to be correct, the ALJ would have had to infer that (1) her hip condition worsened to such a degree that additional limitations were necessary during the relevant timeframe and (2) what specific limitations were required.  There is no evidence establishing either finding, so the ALJ's decision not to add more limitations was supported by substantial evidence (or a lack thereof).

Ultimately, the ALJ did consider the conditions Ms. Minix alleges should have resulted in additional limitations and declined to impose such conditions.  That determination was supported by substantial evidence, so this Court will not re-weigh the evidence to comply with Ms. Minix's view of it.  As a result, Ms. Minix's claim that the VE's testimony does not constitute substantial evidence is unfounded.  [R. 11 at 8.]  The VE concluded that Ms. Minix would be able to find employment with the limitations included in her RFC.  [Tr. at 203.]  But because she believes the RFC did not include sufficient limitations to address her worsening conditions, she argues the VE's conclusion cannot constitute substantial evidence.  [R. 11 at 7-8.]  As explained above, substantial evidence existed to support the RFC formulated by the ALJ.  The Sixth Circuit has clearly held that a VE only needs to take the claimant's limitations into account, not all of their medical conditions, and it is the ALJ's responsibility to determine what limitations the claimant is facing.  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  Ms. Minix may wish the ALJ had weighed the evidence differently when determining which limitations she faced, but substantial evidence supports his conclusion and it is not this Court's role to re-weigh the evidence.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).  Though the Court is sympathetic to Ms. Minix's plight, the Court finds that the ALJ sufficiently explained his decision-making and did not commit reversible error.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Linda Jan Minix's Motion for Summary Judgment **[R. 11]** is **DENIED**, but the Commissioner's Motion for Summary Judgment **[R. 15]** is **GRANTED**.  Judgment in favor of the Commissioner will be entered promptly.


This the 11th day of July, 2022.


Gregory F. Van Tatenhove
United States District Judge